DANIEL L. DYSART, Judge.
 

 Ijn this appeal, appellant J.B. James Construction, L.L.C. (“J.B. James”) asserts that the trial court erred in denying its request for a preliminary injunction and mandamus. For the reasons set forth below, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 On July 22, 2010, the New Orleans Aviation Board (“NOAB”) began receiving bids for a project entitled “North Perimeter Road Improvements, NOAB Contract # 3-3-1-2010-01” (“the Project”), after advertisement in accordance with the Public Bid Law, La. R.S. 38:2211,
 
 et seq.
 
 At the bid opening on July 22, eleven (11) bids were submitted for the Project. Of these bids, J.B. James submitted the lowest numerical bid.
 

 NOAB anticipated that the Project would be funded, at least in part, through a Federal Aviation Administration (“FAA”) Airport Improvement Program grant. The Notice to Bidders for this Project provided, in pertinent part, as follows, with regard to contractor licensing by the Louisiana State Licensing Board for Contractors (“LSLBC”):
 

 1 ¾3.07 LICENSE
 

 Bidder must be in compliance with the licensing laws of the State of Louisiana, La. R.S. 37:2150-2168. The requirements of La. R.S. 37:2157 A(6) apply if Work is funded in whole or in part by federal funds ...
 

 Gibbs
 
 &
 
 Register, Inc. (“G & R”) was the second lowest numerical bidder, and was licensed by the LSLBC, license number 52250, first issued December 17, 2009 for the classification for which the Project was advertised.
 

 J.B. James was initially licensed by the LSLBC pursuant to La. R.S. 37:2150
 
 et seq,
 
 license number 39462, first issued May 16, 2002. J.B. James’s license from the LSLBC was required to be renewed on May 16, 2010. In 2010, the renewal date for LSLBC licenses was changed to the anniversary date of issuance. J.B. James did not renew its license until July 27, 2010, when it became aware that the license should have been renewed on May 16, 2010.
 

 Upon this renewal, the LSBLC posted a date on its website and on the license certificate of the J.B. James license as “Effective July 27, 2010.” The website
 
 *1159
 
 also states that the one year renewal period of the license expires on May 16, 2011. Between the bid opening on July 22, 2010 and July 27, 2010, the NOAB checked the LSLBC website listing of current licensed contractors to determine if J.B. James was a licensed contractor. The website did not reflect that J.B. James had a current contractor’s license on that date.
 

 The NOAB stated its intent to award the Project to G & R. At the time of trial, NOAB proposed to reject the bid of J.B. James at its next Board meeting as nonre-sponsive, asserting that J.B. James did not have a current license when it submitted its bid.
 

 | a J.B. James filed a Rule for Preliminary Injunction and Mandamus. After a hearing, the trial court denied the rule. J.B. James subsequently filed this appeal.
 

 DISCUSSION
 

 In its sole assignment of error, J.B. James contends that the trial court erred in finding that it was not the lowest responsive and responsible bidder, and in denying it preliminary injunctive relief and mandamus. In support of its assertion, J.B. James cites to La. R.S. 87:2156, which provides in pertinent part, “The license becomes invalid on the last day of the term for which it was issued unless renewed ...” J.B. James argues that its subsequent renewal of the license retroactively cured the invalidity. Any other interpretation of this phrase would mean that the conditional clause “unless renewed” is without meaning and effect. Further, the Project was not yet awarded at the time of trial. The contractor must have a valid license at the time of award, not at the time of bid. J.B. James had an active license at the time of the award of the Project. Therefore, J.B. James argues, it was properly licensed at all relevant times, and no just cause existed to reject its bid.
 

 The Bid Documents for the Project consistently require all bidders to have a current contractor’s license. The Invitation to Bid informs bidders in several places that their Louisiana Contractor’s License Number must appear on the bid submission. Importantly, the “yes” box is marked, indicating that a current license is required, and informs bidders:
 

 LTHE BIDDER’S APPLIED CURRENT LICENSE(S) NUMBER(S)
 
 in the following project classification(s): Municipal and Public Works Construction/Highway, Street & Bridge Construction
 
 must be included in bid. NOTE: THE BIDDER MUST SHOW HIS LICENSE NUMBER ON THE BID ENVELOPE if paper submission made.
 

 The Instructions to Bidders, Article 3.07, again informs bidders that a license is required. It also includes the Uniform Bid Form, mandated by the Public Bid Law, which requires bidders to list their contractor’s license number.
 

 Louisiana Contractor’s Law, La. R.S. 37:216S(A)(1), requires a bidder to “certify that he holds an active license under the provisions of this Chapter and show his license number on the bid envelope.” Further, an entity cannot accept a bid from a contractor who does not hold a current active license: “... if the bid does not contain the contractor’s certification and show the contractor’s license number on the bid envelope, the bid shall automatically be rejected, shall be returned to the bidder marked Rejected’, and shall not be read aloud.”
 

 The plain language of the statute makes it clear that the license must be valid at the time the bid is submitted. The license number must be included on all of the bid documents, including the envelope. The law requires an automatic rejection and return of the bid to the bidder before bid,
 
 *1160
 
 opening if the bidder does not have an active license. Thus, we must reject J.B. James’s argument that there need only be a valid license at the time the Project is awarded.
 

 Additionally, because the Bid Documents and Public Bid Law dictate that a current license is required to submit a bid, the NOAB is prohibited from waiving this requirement. As stated by the Louisiana Supreme Court in
 
 Hamp’s Construction, LLC v. City of New Orleans,
 
 05-0489 (La.2/22/06), p. 11, 924 So.2d 104, 111, “The public entity does not have the discretion to determine, after bids Lhave been submitted, whether a requirement is substantive or non-substantive, waivable or non-waivable. Once the public entity establishes a requirement, that requirement must be uniformly followed by all bidders.” The NOAB could not wait to see if bidders cured bid deficiencies, such as a lack of a current license, at a later date, as suggested by J.B. James.
 

 We also reject J.B. James’s argument that the renewal of its license retroactively validated it. The relevant part of the contractor’s license renewal statute, La. R.S. 37:2156, provides:
 

 A. Licenses and renewals issued under the provisions of this Chapter shall expire on the anniversary of the date on which the license was originally issued. Licensees shall elect upon renewal one-, two-, or three-year license renewal terms, and licenses may be issued by the board on a multiple-year basis, not to exceed a three-year renewal term for any license. The license becomes invalid on the last day of the term for which it was issued unless renewed; however, after a license has expired, the person to whom such license was issued shall have fifteen days following the expiration date to file an application for the renewal of such license without the payment of a penalty and without further examination, and any person who makes an application for the renewal of a license after fifteen days following the expiration date of the license may, at the discretion of the board, have his license renewed after paying the required license fees and such penalty, not exceeding the sum of fifty dollars, that the board may impose. New applicants for licensing may elect upon application the renewal term of their license.
 

 B. If a license is not renewed within a period of one year from the date of its expiration, any application for renewal shall be considered and treated as a new application.
 

 The “unless renewed” language refers to the period of time during which an entity can file an application to renew the license without paying the penalty or taking an exam, if renewed within fifteen days; or at the discretion of the contractor’s board, paying a penalty and avoiding taking the exam, if renewed within a period of one year. Section B makes the foregoing interpretation clear by stating that the board will not have the discretion to accept a renewal application, | fiand the entity seeking the license must apply as a new applicant. New applicants have the entire application process to navigate, as well as the exams. Renewal applicants do not have to be examined each time a license expires, if they renew within the time periods set forth in Section A.
 

 The law clearly states that licenses expire on the anniversary of the date on which the license was originally issued. It does not provide that an application for renewal submitted after the license has expired cures the expiration. Nor does it state that expired licenses or renewals
 
 *1161
 
 continue until renewed. When the language of the law is clear and unambiguous and does not lead to absurd consequences, the law shall be applied as written. La. C.C. art. 9. The interpretation of the phrase “unless renewed” urged by J.B. James violates the plain language of the statute and must be rejected.
 

 CONCLUSION
 

 A bidder must have a valid Louisiana contractor’s license as of the time of bid opening. This requirement cannot be cured retroactively. J.B. James did not have a current license on bid day. As such, the NOAB properly rejected its bid, and the trial court correctly denied J.B. James’s rule for preliminary injunction and mandamus. Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed.
 

 AFFIRMED